Filed 9/7/16  P. v. Ligons CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>LAQUANDRA NICOLE LIGONS,<br><br>    Defendant and Appellant. | F071669<br><br>(Fresno Super. Ct. No. F14908872)<br><br>**OPINION** |

### THE COURT[*]

APPEAL from a judgment of the Superior Court of Fresno County.  Gary D. Hoff, Judge.

Robert L.S. Angres, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Michael P. Farrell, Assistant Attorney General, Daniel Bernstein and F. Matt Chen, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]        Before Gomes, Acting P.J., Detjen, J. and Franson, J.

Appellant Laquandra Nicole Ligons pled no contest to voluntary manslaughter (Pen. Code, § 192, subd. (a))[1] and admitted a personal use of a deadly weapon enhancement (§ 12022, subd. (b)(1)).

On appeal, Ligons contends: (1) the court committed *Marsden*[2] error, and (2) the court erred by its failure to hold a closed hearing to consider her request for appointment of new counsel.

## FACTS

### *Background*

On the evening of September 18, 2014, Ligons was with her children, ages two and nine, walking her pit bull on a leash, near Mary Lara's house in Fresno, California. As they approached Lara's front yard, Lara told Ligons to keep her dog on a leash because of Lara's cats. After telling Ligons she had killed two dogs before, Lara taunted Ligons to come closer, and she poked the pit bull on the nose with a metal bar. Ligons walked towards Lara, prompting Lara to close the gate to her yard and walk away. Ligons opened the gate, retrieved a knife from her bra and stabbed Lara repeatedly, fatally wounding her.

As Lara lay on the ground bleeding, Ligons quickly walked away, ignoring a neighbor's plea for her to stop. Thurman Ligons (Thurman) soon drove up and began helping Ligons load the children and the dog into the car as Veronica Fierro, Lara's daughter, confronted Ligons about the stabbing. After putting metal rings on his hand and punching the neighbor on the head, Thurman drove away with Ligons, the children, and the dog.

On September 21, 2014, Ligons was arrested. In a post-arrest statement, Ligons told the officers that as she walked past Lara's house, Lara became belligerent and

---

[1]    All further statutory references are to the Penal Code.

[2]    *People v. Marsden* (1970) 2 Cal.3d 118 (*Marsden*).

2.

threatened to kill Ligons's dog. Lara allegedly threw something at Ligons's son, poked Ligons's dog twice in the face, and Ligons twice in the chest with a rod. Lara also allegedly struck Ligons twice with the rod across the head and forehead and two additional times on the head before Ligons grabbed the rod and "lost it." Ligons, however, did not have any injuries that were consistent with the manner in which Lara allegedly struck her.

An autopsy disclosed that the cause of Lara's death was perforations of her left common carotid artery, jugular vein, and right lung due to multiple stab wounds. Lara also suffered six additional stab wounds to her body and six incise wounds to her face.

On January 15, 2015, the district attorney filed a first amended information charging Ligons with two counts: murder (count 1, § 187, subd. (a)), and voluntary manslaughter (count 4, § 192, subd. (a)). Each count also alleged that Ligons personally used a weapon (§ 12022, subd. (b)(1)).[3] Ligons then pled no contest to voluntary manslaughter, admitted the arming enhancement in that count, and waived her appellate rights in exchange for a 12-year lid and the dismissal of the remaining count and enhancement she was charged with.

On March 25, 2015, the court sentenced Ligons to an aggregate prison term of 12 years, the aggravated term of 11 years on her voluntary manslaughter conviction, and a one-year weapon enhancement.

### The Marsden Issue

In a letter to the probation department dated March 25, 2015, Ligons claimed she acted in self-defense when she stabbed Lara. The introduction to her letter contained the following statement, "I, Laquandra Ligons come in Peace, good faith, clean hands and the grace and forgiveness of Almighty Yahweh and the Blood of His Son Yeshua." Her letter also asserted that because the truth had not been "entered into the record[,]" she was

---

[3] Count 2 of the information charged Thurman with assault with a deadly weapon (§ 245, subd. (a)(1)). Count 3 charged him with being an accessory after the fact (§ 32).

rescinding all agreements and signatures, she was not waiving any protections, rights, or time, and she insisted on exercising her right to a jury trial. In explaining why, she entered a plea, Ligons stated, "The counsel and instructions I have received so far, while in a state of extreme duress, trauma and terror, has led me to inaccurate decisions regarding these charges, my future, my children's future and my husband's future." In closing, the letter stated: "Also with much appreciation and gratitude to attorney Mark Asami [defense counsel], I am relieving him of any and all duty to me or my interests in this matter or any other. *Kindly assign an attorney that is of my faith in the Lord Jesus Christ, and female if possible*. [¶] Peace, Grace and Mercy of Almighty God[.]" (Italics added.)

On March 25, 2015, defense counsel advised the court that Ligons wanted to continue her sentencing hearing based on her desire to seek new counsel and to withdraw her plea. The court asked defense counsel if he was aware of a meritorious basis for Ligons to withdraw her plea. Counsel replied he was not, other than Ligons's claim that she felt duress and was not thinking clearly when she entered her plea. The court noted that it read the change of plea hearing transcript and recalled taking Ligons's plea and that based on what Ligons raised in her letter, the court denied the motion. The following colloquy then ensued:

> "THE COURT: ... There is reference in the defendant's letter that she is relieving Mr. Asami of any and all duties related to this matter and is asking for the court to assign an attorney of [her] faith and a female attorney.
>
> "Ms. Ligons, the counsel you have is court appointed counsel. Only the court can relieve that person and that only takes place if there's some conflict or if there's some finding by the court that the attorney is not competently representing you. Is the basis [of your] request [for] a new attorney [that] you want an attorney of your own faith and that you would prefer to have a female attorney? Are those the grounds that you're raising?

"MS. LIGONS:  *Conflict of interest.  And I rescind all signatures and I do not consent to this.*

"THE COURT:  Well, listen to my question.  The first is the reason that you want [a] new attorney.  Is it because, one, Mr. Asami [defense counsel] is not of your faith?

"MS. LIGONS:  *He's in bad faith to me.*

"THE COURT:  And is a second reason because you would prefer to have a female attorney as opposed to a male attorney?

"MS. LIGONS:  A female attorney is what I would prefer.

"THE COURT:  Other than that is there any other reason that you want the court to appoint someone other than Mr. Asami to represent you?

"MS. LIGONS:  *Out of all the evidence that I've shown to him that has not been shown to you nor the D.A., he has never ever addressed it to the courts, and I relentlessly from time to time had showed him evidence that [has] not been revealed and he has been reluctant to do so.*

"THE COURT:  Generally these types of requests are done in confidence.

"Mr. Asami, is there any evidence that you're aware of that you believe has not been processed by you in the preparation of this case either for the trial or for sentencing?

"MR. ASAMI:  Well, there was evidence that I didn't show my client.  I can see where she's going with this regarding the cell phones and whatnot.  I did not show them to her, but in my mind they were not terribly impactful to the case itself.  I don't know if that answers the court's question.

"THE COURT:  And in part did the reduction of the case from the felony offense of murder, either first or second degree, to manslaughter for purposes of the change of plea resolve some of those issues as it related to the defense?

"MR. ASAMI:  Well, in my mind [I] gave my client many of the reports and I showed her where the big picture of the case was.  And I let her make her own decision on what she wanted to do with it.

5.

"THE COURT: And that was done in the conjunction with the offer that was made and accepted?

"MR. ASAMI: I believe so.

"THE COURT: To the extent that this can be considered a *Marsden* motion the court is denying the motion to relieve Mr. Asami as the attorney of record. There's no showing of inadequacy on his part or that he's committed to an interest that's different or prejudicial to the defendant. There's no factual showing of that, and therefore, the request is being denied." (Italics added.)

## **DISCUSSION**

Ligons contends that in the trial court she asserted defense counsel provided deficient representation by his failure to properly evaluate evidence helpful to the defense. She further contends the court was required to inquire further into the nature of this evidence and then decide, after obtaining feedback from her and counsel, whether any omission by defense counsel infringed on her right to the effective assistance of counsel. Additionally, Ligons contends her statement that defense counsel was "in bad faith to me" suggests that defense counsel could not be loyal to her. Thus, according to Ligons, the court's inquiry of her and defense counsel was inadequate as a matter of law and entitles her to a new, confidential hearing on her *Marsden* motion. We disagree.

"When a defendant *seeks new counsel on the basis that his appointed counsel is providing inadequate representation*—i.e., makes what is commonly called a *Marsden* motion …—the trial court must permit the defendant to explain the basis of his contention and to relate specific instances of inadequate performance." (*People v. Smith* (2003) 30 Cal.4th 581, 604, italics added.)

In *Marsden*, our Supreme Court imposed four requirements on the trial court when a defendant makes a *Marsden* motion: (1) the trial court has the duty to permit the defendant to articulate any causes of dissatisfaction and, if any of them suggest ineffective assistance, to conduct an inquiry sufficient to ascertain whether counsel is, in fact, rendering effective assistance (*People v. Eastman* (2007) 146 Cal.App.4th 688,

6.

695); (2) if a defendant states facts sufficient to raise a question about counsel's effectiveness, the trial court has a duty to question counsel as necessary to ascertain their veracity (*Id*. at p. 696); (3) the trial court has to make a record sufficient to show the nature of the defendant's grievances and the court's response to them; and (4) the trial court must allow the defendant to express any specific complaints about the attorney and allow the attorney to respond accordingly. (*Ibid.*)

"A defendant is entitled to relief if the record clearly shows that the appointed counsel is not providing adequate representation or that defendant and counsel have become embroiled in such an irreconcilable conflict that ineffective representation is likely to result. Substitution of counsel lies within the court's discretion. The court does not abuse its discretion in denying the motion unless the defendant has shown that a failure to replace counsel would substantially impair the defendant's right to assistance of counsel." (*People v. Smith*, *supra*, 30 Cal.4th at p. 604.)

In her letter to the court, Ligons claimed that "[t]he counsel and instructions" she received "while in a state of extreme duress, [t]rauma and terror, has led [her] to inaccurate decisions regarding the charges." She did not, however, contend defense counsel provided her with ineffective representation in entering her plea.[4] Instead, her letter expresses her appreciation and gratitude for her representation by defense counsel. Although Ligons's letter purported to relieve defense counsel from representing her and requested the appointment of new counsel, it is clear that the basis for both actions was that Ligons wanted to be represented by counsel who shared her religious beliefs and was female. Therefore, since her request in her letter for appointment of new counsel was not

---

[4]   It is also unclear to whom, defense counsel, family members or someone else, Ligons attributed "[t]he counsel and instructions" she received.

based on any alleged inadequate representation by defense counsel,[5] the letter did not trigger the court's obligation to conduct a *Marsden* hearing.

Moreover, in addressing Ligons's letter the court first asked if she wanted new counsel appointed because she wanted an attorney of her faith and she preferred a female attorney and Ligons responded, "Conflict of interest." When the court followed up by asking if she wanted a new attorney because her defense counsel was not of her faith, Ligons responded, "He's in bad faith to me." At first glance, Ligons's statements appear to be ambiguous. However, given their context and the religious overtones of her letter, it is clear her comments were a reaffirmation that she wanted new counsel appointed that shared her religious faith and that the "conflict of interest" and "bad faith" she referenced was that defense counsel did not share her faith. Thus, we reject Ligons's contention that through these statements she meant that defense counsel could not be loyal to her.

The record also refutes Ligons's contention that she complained that defense counsel did not properly evaluate evidence favorable to the defense. The portion of the transcript quoted above shows that Ligons complained that defense counsel never "addressed to the courts" evidence that she had showed him but had not been shown to the court or the prosecutor. Prior to trial, defense counsel is required to disclose to the prosecutor certain evidence, including the identities and statements of witnesses the defense intends to call and any real evidence the defense intends to introduce. (§ 1054.3; *Izazaga v. Superior Court* (1991) 54 Cal.3d 356, 374.) We are unaware, however, of any authority that requires defense counsel to "address to the courts" or in any other manner disclose to the court any evidence defense counsel is aware of, whether or not defense

---

[5] Ligons's letter clearly indicates she believed she could relieve counsel on her own initiative. It is also clear that by asking for appointment of new counsel, she was asking the court to fill the void she believed she created by purportedly relieving defense counsel from representing her rather than asking the court to appoint new counsel because defense counsel's representation had been deficient.

counsel intends to introduce it at trial. Thus, Ligons's statement that defense counsel did not "address to the courts" certain evidence did not implicate a deficiency in defense counsel's representation as a basis for her request to have new counsel appointed. Accordingly, we conclude that neither Ligons's statements in her letter to the court nor her statements quoted above triggered the court's duty to conduct a *Marsden* hearing. It follows that the court's inquiry of Ligons and defense counsel was not inadequate.

In any event, even if *Marsden* error occurred, it was harmless. "It is the very nature of a *Marsden* motion, at *whatever* stage it is made, that the trial court must determine whether counsel has been providing competent representation. Whenever the motion is made, the inquiry is forward-looking in the sense that counsel would be substituted *in order to provide effective assistance in the future*. But the decision must always be based on what has happened in the *past*. The further one is in the process, the more counsel has done in the past that can be challenged, but that is a difference of degree, not kind." (*People v. Smith* (1993) 6 Cal.4th 684, 695, italics added.) Reversal for *Marsden* error is not required if the error was harmless beyond a reasonable doubt. (*Marsden*, *supra*, 2 Cal.3d at p. 126.)

In *People v. Washington* (1994) 27 Cal.App.4th 940 (*Washington*), the defendant made a *Marsden* motion in conjunction with a motion for new trial. The trial judge never conducted a *Marsden* hearing but the Court of Appeal concluded the error was harmless. The court reasoned:

> "[Defendant] has made no showing here either that his *Marsden* motion would have been granted had it been heard, or that a more favorable result would have been achieved had the motion in fact been granted. The failure to rule on the motion did not affect [defendant's] trial in any way. The motion was made only *after* he had been convicted. The basis for such a motion at such a time could have been only that his attorney had acted incompetently at trial or in filing the motion for new trial [citation] or, possibly, that [defendant] believed that counsel would be unable to represent him properly at sentencing. The fact that no *Marsden* motion was entertained does not preclude [defendant] from attacking the competency of

9.

his attorney. ... We cannot see how the appointment of a different attorney would have gained [defendant] a new trial, or could have had any effect on the sentence imposed, and we, of course, are able to review [defendant's] claims that the sentence imposed was improper. We therefore conclude that the failure to consider the purported *Marsden* motion has not deprived [defendant] of any arguments or otherwise irrevocably affected the verdict or sentence. Under the circumstances, and on the record before us, we cannot see that [defendant] would have obtained a result more favorable to him had the motion been entertained." (*Washington*, *supra*, 27 Cal.App.4th at p. 944.)

As in *Washington*, Ligons has not made any showing on appeal that her counsel was ineffective or that she would have received a more favorable result had the court granted her request for appointment of new counsel. Nor, can we see how appointment of new counsel would have benefited her. Ligons first requested appointment of new counsel in her letter dated March 25, 2015, the same day of her sentencing hearing. The only basis for a *Marsden* motion at that time was that defense counsel had not properly represented her in entering her plea. However, Ligons did not claim defense counsel provided inadequate representation during the change of plea proceedings and her only real complaint was that she entered her plea "in a state of extreme duress, trauma and terror" that caused her to make "inaccurate decisions." This complaint, however, is contradicted by the transcript of the change of plea proceeding which does not show that she was under extreme mental stress when she entered her plea and by her affirmative answer to the court's question whether she was entering her plea "freely and voluntarily[.]" Further, Ligons has not alleged, nor does our review of the sentencing transcript disclose, that defense counsel was ineffective in representing her at sentencing or how substitution of defense counsel could have resulted in her obtaining a more favorable sentence.[6] Therefore, since it does not appear that further inquiry of Ligons or

---

**6** Defense counsel filed a statement in mitigation arguing that there were several circumstances in mitigation. During sentencing he argued at length regarding these mitigating circumstances and he presented several letters and the testimony of several family members in support of Ligons.

defense counsel would have resulted in the filing of a meritorious motion to withdraw plea or that it affected Ligons's sentence, we conclude that if *Marsden* error occurred, it was harmless beyond a reasonable doubt.

### The Failure to Hold a Closed Hearing

Ligons cites the court's statement that "[g]enerally, these types of requests are done in confidence" to contend the court "opined that the hearing should be conducted in a confidential setting and thus believed that [her] request to replace her counsel could lead to the disclosure of confidential material or a defense strategy." Thus, according to Ligons, the court was duty bound to conduct a confidential hearing on her request for appointment of new counsel.

Ligons's contention is moot in light of our conclusion that her written and oral statements to the court did not trigger the court's duty to conduct a *Marsden* hearing. However even if this claim was properly before us, we would reject it.

"[T]he better practice [in a *Marsden* hearing] is to exclude the district attorney when a timely request is made to do so by the defendant or his counsel. In the absence of a request, the trial court should exclude the district attorney whenever information would be presented during the hearing to which the district attorney is not entitled, or which could conceivably lighten the prosecution's burden of proving its case." (*People v. Madrid* (1985) 168 Cal.App.3d 14, 19.)

Defense counsel did not request a closed hearing on Ligons's request for appointment of new counsel. Further, the information presented during the hearing on her motion did not include information that the prosecutor was not entitled to or that could lighten the prosecution's burden of proving its case. Nor did any of the comments made during that hearing indicate that any such information might be disclosed. Thus, assuming that Ligons's letter and/or comments triggered the court's duty to conduct a *Marsden* hearing, the court did not err by its failure to hold a closed hearing.

11.

Moreover, " 'It is the general rule for error under [California] law' … 'that reversal requires prejudice and prejudice in turn requires a reasonable probability of an effect on the outcome' under *People v. Watson* (1956) 46 Cal.2d 818." (*People v. Alvarez* (1996) 14 Cal.4th 155, 216.)

Ligons does not allege or discuss how the failure to conduct a confidential hearing on her request for appointment of new counsel prejudiced her. In any event, the record establishes that Ligons was not prejudiced by the failure to do so because, as noted above, no information that the prosecutor should not have been privy to was disclosed during the hearing. Thus, even if the court error by its failure to hold a confidential hearing, Ligons would not be entitled to reversal of the judgment.

## DISPOSITION

The judgment is affirmed.